

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 20 2015
CLERK, U.S. DISTRICT COURT
By_____
   Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETRINA GEASON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-CV-1353-N |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS & RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Petrina Geason ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for a period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act") pursuant to 42 U.S.C. § 405(g). For the following reasons, the District Court should REVERSE AND REMAND the final decision of the Commissioner.

## BACKGROUND

Plaintiff alleges that she is disabled due to a variety of ailments including fibromyalgia, chronic pain syndrome, neuropathy, diabetic neuropathy affecting her hands and her feet, depression, and bilateral carpal tunnel. *See* Tr. [D.E.14-3 at 35-36]. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on October 16, 2012 in Texas before ALJ Mary Elizabeth Johnson ("ALJ"). *Id.* [D.E.14-3 at 33]. At the time of the hearing, Plaintiff was 39 years old. *Id.* [D.E.14-3 at 36]. Plaintiff has some college education. *Id.* [D.E.14-3 at 36]. Plaintiff has worked in the past as a medical assistant and billing clerk. *Id.* [D.E.14-3 at 55]. Plaintiff has not engaged in substantial gainful activity since May 1, 2009. *Id.* [D.E.14-3 at 18].

The ALJ posed to the Vocational Expert ("VE") a hypothetical individual within the same age category and who has the same education and work history as Plaintiff. *See id.* [D.E. 14-3 at 56]. The hypothetical individual was limited to the following: sedentary work; frequent but not constant grasping, gripping, handling, fingering, and feeling; could understand, carry out and remember simple, but not complex or detailed instructions; and could use judgment to make simple work related decisions with a few variables. *See id.* [D.E. 14-3 at 56]. The VE testified that Plaintiff could not perform her past relevant work but could work as a charge account clerk, call-out operator, and a telephone quotation clerk. *See id.* [D.E. 14-3 at 56]. The VE further testified that if due to symptom flare-ups, as well as the need for medical treatment, the claimant would tend to miss two or three days of work each month, the claimant would not be able to maintain competitive employment. *See id.* [D.E. 14-3 at 57].

The ALJ determined that while Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, hypertension, thyroid disorder, diabetes mellitus with peripheral neuropathy, status post bilateral carpal tunnel syndrome with bilaterial trigger release, obesity, and major depressive disorder, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *See id.* [D.E. 14-3 at 18-19]. The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and fewer than ten pounds frequently. *See id.* [D.E. 14-3 at 20]. Further, the ALJ determined that Plaintiff can stand and walk two hours in an eight-hour workday and sit six hours in an eight-hour workday and frequently but not constantly grasp, grip, handle, finger, and feel, and understand, remember, and carry out simple instructions and use

judgment to make simple, work-related decisions with a few variables. *See id.* [D.E. 14-3 at 20]. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* [D.E. 14-3 at 24]. The ALJ determined that Plaintiff can perform a modified range of sedentary work and can perform the tasks of a charge account clerk, a call out operator, and a telephone quotation clerk. *See id.* [D.E. 14-3 at 24].

## LEGAL STANDARDS

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

    (4)    if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

    (5)    if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*,

38 F.3d at 236.

Absent an error that affects the substantial rights of a party, administrative proceedings do not require "procedural perfection." *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 2931884, *5 (N.D. Tex. June 30, 2014) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). Procedural errors affect substantial rights of a party only when the errors "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is required where there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010). Further, "[t]he ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-44-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013).

## **DISCUSSION**

Plaintiff's appeal raises the following issues:

> 1. Whether the ALJ's RFC finding was supported by substantial evidence given that the ALJ rejected the opinion of Plaintiff's treating endocrinologist, Dr. Task Dattatreya, the only opinion in the record discussing the effects of Plaintiff's peripheral neuropathy on her ability to use her hands; and
>
> 2. Whether the ALJ committed reversible error by rejecting Dr. Dattatreya's opinion without acknowledging the principal that greater weight should be given to a treating source's opinion than to the opinions of non-treating sources even if the treating source's opinion is inconsistent with other substantial evidence.

Pl.'s Br. [D.E. 19 at 9]. Plaintiff contends that the ALJ's finding that she can frequently but not constantly grasp, grip, handle, finger, and feel is without opinion evidence support and represents

the ALJ's lay interpretation of raw medical data because no other medical opinion, other than that of Dr. Dattatreya, discusses the effects of Plaintiff's peripheral neuropathy on her ability to use her hands, and the ALJ rejected Dr. Dattatreya's opinions regarding Plaintiff's manipulative limitations. *See id.* [D.E. 19 at 22-24]. Further, Plaintiff contends that the ALJ's decision demonstrates a failure to recognize the special deference accorded to treating source opinions even when they are not given controlling weight and that the ALJ erred in concluding that no treatment records documented a diagnosis of fibromyalgia because Dr. Dattatreya, as Plaintiff's long-term provider, had access to multiple source records. *See id.* [D.E. 19 at 28-30]. Plaintiff also contends that she was prejudiced by the ALJ's errors because there was no opinion evidence to support the limitations related to the use of her hands in the hypothetical question posed to the VE and the ALJ determined that Plaintiff could perform the tasks of the occupations listed by the VE. *See id.* [D.E. 19 at 31].

The ALJ noted that Plaintiff's treating physician, Dr. Dattatreya submitted a medical source statement in October of 2012 stating that Plaintiff could only perform sedentary work on a part-time basis. *See* Tr. [D.E. 14-3 at 23]. The ALJ further noted that she gave Dr. Dattatreya's opinion little weight because while Dr. Dattatreya characterized the pain in Plaintiff's hands and feet as fibromyalgia, no treatment records made such a diagnosis. *See id.* [D.E. 14-3 at 23]. While the ALJ determined that Plaintiff could perform a modified range of sedentary work and could frequently, but not constantly grasp, grip, handle, finger, and feel, Dr. Dattatreya opined that Plaintiff could perform "very little" fingering (fine manipulation, e.g., for keyboarding). *See id.* [D.E. 14-3 at 20; 14-17 at 26]. Further, Dr. Dattatreya determined that Plaintiff's need for rest breaks during an 8 hour work day exceeded the usual 15 minutes in the morning and afternoon and ½ to 1 hour lunch break because of pain in her hands and feet, and that Plaintiff is also likely to miss more than two days of

work per month due to her fibromyalgia. *See id.* [D.E. 14-17 at 26]. The VE testified that if Plaintiff misses two or three days of work each month, she would not be able to maintain competitive employment. *See id.* [D.E. 14-3 at 57]. The ALJ also noted in her decision that a state agency medical consultant ("SAMC"), Dr. John Durfor determined that Plaintiff could perform a full range of sedentary work but because of Plaintiff's history of carpal tunnel syndrome and peripheral neuropathy, the ALJ accorded Dr. Durfor's opinion only some weight. *See id.* [D.E. 22 at 23].

The Commissioner points to the opinion of Dr. Michael Hahn from December 22, 2010 whose treatment notes indicate that although Plaintiff experienced residual numbness in her fingertips after her carpal tunnel surgery, her range of motion had significantly improved. *See* Def.'s Br. [D.E. 20 at 8]; Tr. [D.E. 14-8 at 32-35]. The Commissioner also notes that Dr. Hahn observed on May 18, 2011 that Plaintiff's thumb was "doing very well" after receiving cortisone injections. *See* Def.'s Br. [D.E. 20 at 8]; Tr. [D.E. 14-8 at 97]. The Commissioner also refers to the opinion of Dr. Brian Grimwood who treated Plaintiff for her diabetes and observed on August 1, 2012 that Plaintiff demonstrated intact fine motor movement. *See* Def.'s Br. [D.E. 20 at 8]; Tr. [D.E. 14-17 at 11].

Plaintiff argues in her reply that Dr. Grimwood's and Dr. Hahn's conclusions that Plaintiff had no manipulative limitations are contrary to the ALJ's finding that peripheral neuropathy was a severe impairment expected to interfere with Plaintiff's ability to perform work activities and that neither doctor determined the extent to which Plaintiff's impairment would affect her ability to use her hands during an eight-hour work day. *See* Pl.'s Reply [D.E. 21 at 6]. While Dr. Durfor did give an opinion on the effects of Plaintiff's manipulative limitations on her ability to work, Plaintiff contends that the ALJ did not cite Dr. Durfor's opinion as a basis for his finding. *See id.* [D.E. 21

7

at 7]; Tr. [D.E. 14-8 at 87]. Plaintiff further argues that the ALJ made a finding of severe peripheral neuropathy when no doctor determined that Plaintiff could frequently perform manipulative functions despite such a diagnosis. *See* Pl.'s Reply [D.E. 21 at 6-7].

In *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995), the Fifth Circuit explained as follows:

> The ALJ is responsible for determining an applicant's residual functional capacity. After considering the evidence, however, we conclude that the ALJ's determination . . . was not supported by substantial evidence. The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back. What the record does not clearly establish is the effect Ripley's condition had on his ability to work. . . . The Commissioner argues that the medical evidence substantially supports the ALJ's conclusion. In making this argument, the Commissioner points to reports discussing the extent of Ripley's injuries. Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's conditions . . . on his ability to perform sedentary work.

*Id.* Here, the ALJ explained that because of Plaintiff's history of carpal tunnel syndrome and peripheral neuropathy, she declined to follow the opinion of the SAMC, Dr. Durfor who determined that Plaintiff could perform the full range of sedentary work. *See* Tr. [D.E. 14-3 at 23]. The ALJ also stated that he gave little weight to the opinion of Plaintiff's treating physician, Dr. Dattatreya who determined that Plaintiff could only perform part-time work due to pain in her hands and feet because Dr. Dattatreya characterized that pain as stemming from fibromyalgia. *See id.* [D.E. 14-3 at 23]. Having declined to rely upon any of the medical source opinions addressing the effects of Plaintiff's impairment on her ability to work, the ALJ then improperly made an independent RFC finding. *See Thornhill v. Colvin*, 3:14-CV-335-M (BN), 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015) ("The problem with the ALJ's RFC determination is, as Plaintiff argues, that the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability

to work and relied on progress notes that do not themselves address Plaintiff's work limitations. . . . .While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley* . . . ." (citing *Ripley*, 67 F.3d at 557-58; *Williams v. Astrue*, 355 F. App'x 828, 831-32 (5th Cir. 2009)); *see also Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("In *Ripley*, we held that an ALJ may not-without opinions from medical experts-derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.").

The ALJ should have sought clarification regarding Dr. Dattatreya's fibromyalgia diagnosis or otherwise sought other medical opinion regarding the effects of Plaintiff's peripheral neuropathy on her ability to work given that the ALJ rejected the medical opinions in the record that analyzed the effects of this impairment on her ability to perform work activities. *See Thornhill*, 2015 WL 232844, at *10 ("Rather [than independently deciding the effects of Plaintiff's impairments], it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given her impairments.") (citing *Ripley*, 67 F.3d at 557); *Newton*, 209 F.3d at 457 ("The Fifth Circuit [] imposes a duty on an ALJ to develop the facts fully and fairly relating to an applicant's claim for disability benefits. . . . If the ALJ does not satisfy his duty, his decision is not substantially justified.") (internal quotations and citations omitted).

Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence. Therefore, the undersigned recommends that the Court remand the final

decision of the Commissioner for proceedings consistent with this recommendation.

## RECOMMENDATION

For the reasons stated above, the undersigned respectfully recommends that the Court REVERSE AND REMAND the final decision of the Commissioner.

SO RECOMMENDED, this 20 day of July, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).